**SO ORDERED.**

**SIGNED this 12 day of December, 2008.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

**JOEL F. HOLLOWELL OIL COMPANY, INC.**

    DEBTOR.    Case No. 08-05299-8-JRL
            Chapter 11

_____

### ORDER

This case is before the court on the motion to restrict use of cash collateral filed by Gateway Bank and Trust Company ("Gateway"). On December 10, 2008, the court conducted a hearing on this matter in Greenville, North Carolina.

### BACKGROUND

The debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on August 6, 2008. The debtor is a North Carolina corporation and operates an oil company in Perquimans County. Gateway has a first lien security interest in all of the debtor's equipment, fixtures, inventory and accounts receivable in the approximate amount of $622,123.66. On October 17, 2008, the court entered a Final Order authorizing the debtor's use of cash collateral for its post-petition operating expenses. Subsequently, on December 5, 2008, Gateway filed a motion to restrict the

debtor's continued use of cash collateral.

## DISCUSSION

In a Chapter 11 case, the Bankruptcy Code requires that a debtor-in-possession must obtain either the creditor's consent or the court's authorization before it may use, sell, or lease cash collateral. 11 U.S.C. § 363(c)(2). Section 363 further provides that, "on request of an entity that has an interest in property used, sold, or leased . . . , the court . . . shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." Id. § 363(e). In the case at bar, the debtor is authorized to use cash collateral pursuant to the court's Final Order authorizing such use. However, Gateway asserts that a subsequent examination of the debtor's books and records has revealed that Gateway's interest is not adequately protected. As a result, Gateway requests that the court restrict the debtor's use of its cash collateral.

Gateway asserts that its interest is not adequately protected because there is insufficient equity in its collateral. In support of Gateway's position, John Bass prepared an analysis of the debtor's books and records and testified before the court. At hearing, Gateway established that Mr. Bass was an expert in the preparation and analysis of books and records of businesses, including monthly reports, accounts receivable, and income statements. Mr. Bass established at hearing that as of November 24, 2008, the debtor owned accounts receivable arising within 90 days worth approximately $380,766.89. Mr. Bass also established that the debtor owned accounts receivable older than 90 days in the approximate amount of $1,033,584.24. Mr. Bass testified that in his experience, accounts receivable older than 90 days are difficult to collect. Additionally, Mr. Bass established that accounts receivable over 90 days old in the amount of $765,711.44 represented debt incurred by the debtor's sister company, Hollowell Oil Transport, Inc. ("Oil Transport"). On cross

examination, the President of the debtor, Joel Russell Hollowell, established that the debtor's recent practice was to refrain from collecting such debt. Mr. Hollowell also testified that he could not recall the last time the debtor collected on debt owed by Oil Transport. As a result, Gateway contends that the majority of the debtor's accounts receivable are not collectable and insufficient to adequately protect Gateway's interest.

Gateway also asserts that its interest is not adequately protected because the value of its collateral has deteriorated since the date of petition. At hearing, Mr. Bass established that the total value of accounts receivable for customers other than Oil Transport was approximately $781,484.00 as of November 24, 2008. Mr. Bass further established that such receivables had decreased by $133,263.75 since June 30, 2008. Additionally, Mr. Bass established that the debtor suffered a net operating loss during the months of August and September 2008. On the other hand, Mr. Bass's analysis reflected net income for October in the amount of $76,198.98. However, Mr. Bass established that a significant factor in the debtor's October performance was a 13.02% margin with respect to fuel sales. Mr. Bass testified that the debtor's margin for fuel sales in October was abnormally high and unlikely to be repeated. Based on the decrease in value of the debtor's receivables and the questionable ability of the debtor to continue to realize positive net income, Gateway argues that its collateral position is dissipating and it is entitled to adequate protection.

In response to Gateway's contentions, the debtor asserts that Gateway is adequately protected and is therefore not entitled to restrict the debtor's use of cash collateral as previously authorized by the court. First, the debtor argues that Mr. Bass's analysis inaccurately reflects the debtor's financial health post-petition. Mr. Bass's analysis contrasts the debtor's financial records as of November 24, 2008 with its records as of June 30, 2008. However, the debtor did not file its

petition until August 6, 2008. Thus, the debtor argues that Mr. Bass's analysis fails to establish whether any decrease in the value of receivables occurred before the debtor filed its petition. Additionally, Mr. Hollowell established at hearing that his business is seasonal and that he often does not collect accounts receivable until the following year. Therefore, the debtor argues that the majority of the debtor's accounts receivable older than 90 days remain collectable. Second, the debtor argues that its performance in October is indicative of its improved financial condition. At hearing, Mr. Bass established that the debtor's net income for the month of October was approximately $76,198.98. Also during October, the debtor increased the value of its receivables by approximately $18,605.07. Thus, the debtor argues that the continued use of cash collateral will not adversely affect Gateway's interest. Third, the debtor argues that even if the value of its accounts receivable is deteriorating, Gateway is protected by a sufficient equity cushion. According to the debtor's disclosure statement, Gateway's collateral is protected by equity in excess of $1,600,000.00 and including $700,000.00 in collectable receivables, $710,000.00 from equity in the debtor's real property, $150,000.00 in inventory, and $48,000.00 from equity in certain equipment. Even if Gateway is correct in asserting that the debtor holds just $380,766.89 in collectable receivables, the debtor argues that there is significant equity securing Gateway's interest.

      The court finds that Gateway has failed to establish that its collateral position has deteriorated to the extent that it lacks a sufficient equity cushion. The debtor is operating at about the level the court anticipated when it authorized the use of cash collateral. As evidenced by Mr. Bass's analysis, the debtor's performance in October shows improvement. Although the debtor's accounts receivable have suffered a diminution in value, the court finds that Gateway's interest is adequately protected by equity in the debtor's real property, inventory, accounts receivable and

equipment.

Based on the foregoing, Gateway's motion is DENIED, subject to two requirements. First, the debtor is required to provide budget projections for the months of December and January which illustrate how the debtor will use cash collateral. Second, the debtor's confirmation hearing is scheduled for January 27, 2009. If the debtor is unsuccessful at this hearing, the debtor will be required to provide adequate protection payments to Gateway as a condition to remaining in Chapter 11.

"END OF DOCUMENT"